# Green & Willstatter

ATTORNEYS AT LAW
200 MAMARONECK AVENUE
SUITE 605
WHITE PLAINS, NEW YORK 10601

———

THEODORE S. GREEN                    (914) 948-5656
RICHARD D. WILLSTATTER          FAX (914) 948-8730                    E-MAIL: THEOSGREEN@MSN.COM

August 15, 2014

HON. VINCENT L. BRICCETTI
United States District Court
300 Quarropas Street
White Plains, New York   10601

      re: *United States v. Melvin Lowe*, 13 Cr 985 (VB)

Dear Judge Briccetti:

      This letter is submitted in opposition to the government's motion and in support of a defense application a) to admit a prior conviction and judicial admissions of the defendant's tax preparer from the record of *United States v. Mofunanya*, 13 Cr. 11 (JGK), and b) to strike from the indictment, in connection with Count Three, allegations that the defendant falsely omitted income from an alleged scheme to defraud.

Impeachment of Tax Preparer's Out-of-Court Statements

      All of the tax returns that the government will seek to offer into evidence (including the returns that it alleges were not filed and stated a higher income from 2008 and 2009 than the returns from those years that were filed) were prepared by JJM Financial Consultants.  The government states that the owner of this business was John Mofunanya.  The government seeks to exclude evidence of Mofunanya's conviction where he pleaded guilty on September 20, 2013, in the Southern District of New York, to six counts of an indictment charging him with subscribing to false U.S. Corporate income tax returns and one count of theft of government funds.  The offense conduct took place between 2007 and in or about 2010.  *United States v. Mofunanya*, 13 Cr. 111 (JGK) (SDNY).  According to a sentencing memorandum filed by the government in that prosecution:

      during tax years 2007 through 2009, the defendant used his tax preparation business, JJM Financial Consultants, to file fourteen fraudulent corporate tax returns for six shell companies that he owned and controlled. The shell companies declared false and fictitious fuel use and tax credits, and sought refunds.  Specifically, between in or about 2008 and about 2010, the shell companies, claimed to have purchased a total of approximately 19,532,525 gallons of fuel, claimed a total of approximately \$3,574,453 in federal fuel tax

credits, and claimed a total of approximately $2,282,580 in tax refunds.  Of this $2,282,580 in refunds, the Internal Revenue Service ("IRS") issued a total of approximately $649,577.81 in refunds.  The defendant claimed that the millions of gallons in fuel were used in livery cabs and other delivery vehicles.  Applicable federal tax law and regulations do not permit fuel tax credits for such use.  And moreover, the companies' records do not support the claim that this quantity of fuel was ever purchased or used.  *United States v. Mofunanya*, 13 Cr 111 (JGK). ECF Document #26, p. 1, filed March 22, 2014.

In the plea agreement between Mofunanya and the government, the parties agreed to disagree on whether he employed a special skill pursuant to USSG §3B1.3, which made a difference in whether the guideline range would be 37-36 months or 46-57 months (ultimately, Mofunanya was sentenced to 30 months' imprisonment).  In arguing against the special-skill enhancement, Mofunanya, through his attorney, argued in a sentencing memorandum that:

> While Mofunanya did prepare taxes for customers, he did so using a generic computer program which required absolutely no formal training or experience.  Additionally, Mr. Mofunanya's education, as detailed earlier, consisted of approximately two years of college courses in 1983-84. Given his minor tax preparer background, it cannot be said that he employed a 'special skill' to perpetrate his fraud.  ECF Document #25, p. 6, filed March 21, 2014.

The government intends to offer the tax returns that Mofunanya prepared without calling Mofunanya as a witness.  Fed. R. Evid. 806 provides:

> When a hearsay statement – or a statement described in Rule 801(d)(2)(C), (D), or (E) – has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness.

This rule has been applied to admit evidence of a non-testifying declarant's prior convictions. *United States v. Cornelius*, 623 F.3d 486, 488, n.1 (7th Cir. 2010); *United States v. Nachamie*, 101 F.Supp.2d 134, 149-150 (SDNY 2000).

The tax returns that Mofunanya prepared are within the ambit of Rule 806 because the government contends that they are "made by" the defendant's "agent . . . on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).  The government will offer these returns without having the tax preparer testify, and presumably ask the jurors to infer that the  defendant knowingly and wilfully filed false returns through the preparer.  If the preparer testified as a prosecution witness, the defense most assuredly would be permitted to subject him to

a vigorous cross examination.  Instead, the government will be seeking to offer a bare documentary record, including the preparer's out-of-court statements on the tax returns, and asking the juror to infer that this documentary record establishes that the defendant, who indisputably relied on the services of a tax preparer, acted knowingly and willfully.  As such, the defense should be permitted to attack the credibility of the tax preparer, including with respect to both his competency and his honesty.

Opposition to 404(b) Application

The defense opposes the government's application to offer evidence of writing bad checks or charging personal expenses to his business American Express account.  The government contends that this constitutes proof of motive and intent with respect to the counts charging a fraud on the DSCC.  This is weak evidence of defendant's intent or motive to commit a fraud on the DSCC, and it is far outweighed by the danger of unfair prejudice.  The DSCC counts will turn on questions specific to the parties involved in the transactions and the persons within and without the DSCC who are alleged to have known the relevant facts.  Evidence of the defendant writing a check on insufficient funds for  personal expenses, and his charging personal expenses on a business credit card that he ultimately repaid to the business, are attenuated from the offense conduct and create a substantial risk that the jurors will rely on such prejudicial evidence to overcome gaps and doubts in the government's proof on whether a fraud against the DSCC occurred at all.

Motion to Strike Prejudicial Surplusage

The government contends that defendant borrowed $66,000 from a person and promised to repay within a few days, but never repaid the loan.  Normally, a loan is not income (because it does not constitute a change in net worth), but the government's theory apparently is that the loan proceeds became income owing to an intent to defraud on the part of the defendant.  The government has included in the indictment under Count Three an allegation that Lowe, in his 2007 return, failed to report the proceeds of the alleged "scheme to defraud" a person.  For the 2007 tax year, the government alleges that the defendant had "actual gross receipts" of $302,050 and that he reported gross receipts of $21,903.  The total unreported income that the government alleges is almost five times the amount that the government alleges was the proceeds of a fraud.  Accordingly, the government does not need to prove the alleged "scheme to defraud" $66,000 to establish the elements of this count, and its inclusion as part of the alleged unreported income is prejudicial. Accordingly, the defense moves to strike that allegation from the indictment as surplusage.

Very truly yours,

s/ Theodore S. Green
THEODORE S. GREEN

cc:  All counsel (by ECF)

3