

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

August 19, 2014

Hon. Vincent L. Briccetti
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

           Re:  <u>United States</u> v. <u>Lowe</u>, 13 Cr. 985 (VB)

Dear Judge Briccetti:

         The United States respectfully moves <u>in</u> <u>limine</u> to admit relevant statements made by the defendant in proffer sessions. Recent filings by the defendant indicate that he intends to raise a defense that he relied on his accountant in the preparation of his false tax returns.  That defense is inconsistent with admissions the defendant made during proffer sessions that he knowingly minimized his income on his tax returns.  Accordingly, should the defendant continue to pursue a reliance defense, his admissions during his proffer sessions regarding his tax returns should be admitted to rebut arguments made by the defense at trial and to impeach the defendant's testimony if he testifies.[1]

---

[1] The Government believes that other statements made by the defendant during his proffers may become admissible as well as the case goes forward.  For example, the Government has reason to believe that the defendant will claim, in response to the charges in Counts 1 and 2, that he intended to perform services for the DSCC in exchange for the $100,000 he took and did not intend to defraud the DSCC of $100,000.  That defense would be inconsistent with, among other things, his admission during the May 23, 2013 proffer that he did no work for the money and did not repay it because he "got greedy."  Further, the defendant admitted during the same proffer that he falsely told a financial institution that he had $66,000 in cash on hand to use to purchase his Georgia house.  That admission would likely rebut any defense the defendant would offer in response to the charge in Count 9.  Finally, the defendant admitted that he never repaid his loan from John Doe, despite having the funds to do so.  That admission, when coupled with evidence that the defendant repeatedly promised to repay Doe when he had the

**The Proffer Agreement Expressly Permits**
**Admission of the Defendant's Proffer**
**Statements To Counter His Inconsistent**
**Arguments and to Impeach His Inconsistent Testimony**

 The defendant met with the Government in proffer sessions on May 23, 2013; May 28, 2013; May 31, 2013; June 4, 2013; and June 7, 2013.  According to the case agent's memorandum of interview, the defendant stated the following during the May 23, 2013 proffer:

 Upon resuming the interview, Lowe was again shown the 2007 through 2009 tax returns and the summary of bank deposits for those years.  Lowe admitted that on his 2007 tax return, he falsely reported gross receipts of $21,903, when he knew his receipts were in excess of $289,000.  He further admitted that on his 2008 tax return, he falsely reported gross receipts of $26,331, when he knew his receipts were in excess of $310,000. He admitted that on his 2009 tax return, he falsely reported gross receipts of $25,000, when he knew his receipts were in excess of $310,000.  He further admitted to failing to file individual income tax returns for the years 2010 through 2012, when he knew he had a legal duty to do so because he had gross income of at least $408,000, $274,000 and $241,000 for the years 2010, 2011, and 2012 respectively.

 It was not until June 5, 2013, after the Government reviewed with the defendant his potential offense level under the Sentencing Guidelines, that the defendant said that he thought his accountant was "dirty" and further thought his accountant gave him bad advice.

 The proffer sessions were governed by a proffer agreement, which stated in relevant part that:

 (2) In any prosecution brought against Client by this Office, except as provided below the Government will not offer in evidence on its case-in-chief, . . . any statements made by the Client at the meeting . . . .

 . . .

---

funds, is relevant to prove the defendant defrauded Doe and therefore failed to report all his income in 2007.

(3) Notwithstanding item (2) above: . . . (b) in any
prosecution brought against Client, the Government may
use statements made by Client at the meeting and all
evidence obtained directly or indirectly therefrom for
the purpose of cross-examination should Client
testify; and (c) the Government may also use
statements made by Client at the meeting to rebut any
evidence or arguments offered by or on behalf of
Client . . . at any state of the criminal prosecution
. . . in any prosecution brought against Client.

The plain language of paragraph three as quoted above
expressly delineates two distinct ways that the Government can
use the defendant's proffer statements against him at trial: (1)
to cross-examine him if he takes the stand; and (2) to rebut any
evidence or arguments offered on his behalf.

**The Proffer Agreement Should be**
**Enforced As a Matter of Contract Law**

This Court should enforce the proffer agreement's express
and unambiguous terms. It is by now axiomatic that agreements
between the Government and a criminal defendant are "'interpreted
according to principles of contract law.'" United States v.
Gregory, 245 F.3d 160, 165 (2d Cir. 2001); see United States v.
Barrow, 400 F.3d 109, 117–18 (2d Cir. 2005); United States v.
Liranzo, 944 F.2d 73, 77 (2d Cir. 1991). "[A]s long as a
defendant enters into a proffer agreement knowingly and
voluntarily and the terms of the proffer agreement are clear and
unambiguous, fairness dictates that the agreement be enforced."
United States v. Gomez, 210 F.Supp.2d 465, 475 (S.D.N.Y. 2002).

The defendant entered into this agreement knowingly and
voluntarily. He was represented by experienced counsel at the
time he signed the agreement and during all of the proffer
sessions. In signing the agreement, the defendant and his
attorney both acknowledged that "they have fully discussed and
understand every paragraph and clause in this Agreement and the
consequences thereof." Apparently, he and his counsel believed,
as most participants in proffer sessions do, that he would
benefit from a proffer session. The defendant's proffer
sessions gave him an opportunity to convince the Government to
enter into a cooperation agreement with him and thus enable him
to receive a substantial downward departure at sentencing. See
Gomez, 210 F.Supp.2d at 475; see also United States v. Chaparro,
181 F.Supp.2d 323, 334-35 (S.D.N.Y. 2002).

**Courts Routinely Enforce Proffer Agreements**
**Containing Provisions Similar to Those**
**Contained in the Defendant's Proffer Agreement**

The weight of authority supports the admission of the defendant's proffer statements to impeach his trial testimony and rebut any arguments or evidence offered on his behalf.  In United States v. Mezzanatto, 513 U.S. 196, 210 (1995), the Supreme Court held that even though statements made during plea negotiations are generally inadmissible under Fed. R. Evid. 410 and Fed. R. Crim. P. 11(e)(6) [now Rule ll(f)], a defendant may waive the right to prevent their admissibility as long as the waiver was knowing and voluntary.  The defendant in Mezzanatto agreed that the Government could use any statements made during plea discussions to impeach any contradictory testimony given at trial.  Id. at 198.  When the negotiations failed, the Government proceeded to trial.  The defendant took the stand and denied knowing that the package he sold to an undercover officer contained methamphetamine.  Id. at 199.  On cross-examination, and later with a rebuttal witness, the prosecutor impeached this testimony with the defendant's statements made during the plea negotiations.  Id.  On appeal, the Supreme Court resolved a split in the Circuits on the enforceability of pretrial agreements to waive the protections contained in Rules 11(e)(6) [now Rule 11(f)] and 410 governing statements made during the course of proffers.  The Supreme Court held that the protections in those rules are waiveable for purposes of impeachment since "[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution."  Id. at 201.  The Court concluded that evidentiary rules should be subject to a similar presumption.  Id.

Following Mezzanatto, courts have routinely enforced proffer agreement provisions permitting impeachment and rebuttal by the defendant's proffer statements.  Courts that have considered the parameters of proffer agreements similar to the one signed by the defendant have routinely concluded that a defendant exposes himself to adverse use of his proffer statements if his counsel, when cross-examining a Government witness or making opening statements or closing arguments, takes a position contrary to admissions made during a proffer session.  See, e.g., Barrow, 400 F.3d at 120-21 (statements subject to proffer agreements admissible when they directly or impliedly contradict fact asserted at trial); Gomez, 210 F.Supp.2d at 474-75 (holding proffer statements admissible for rebutting testimony, evidence or arguments offered by or on behalf of the

4

defendant)[2]; <u>United States v. Chen Xiang</u>, 2003 WL 21180400 at *2 (S.D.N.Y. 2003) (same); <u>United States v. Maynard</u>, 232 F.Supp.2d, 39-40 (E.D.N.Y. 2002) (same).

**The Proffer Agreement Should Be Enforced**
**<u>To Promote the Interests of Justice</u>**

The central function of every trial is to discover the truth. <u>See</u> <u>Portuondo v. Agard</u>, 529 U.S. 61, 73 (2000); <u>Nix v. Whiteside</u>, 475 U.S. 157, 166 (1986) ("the very nature of a trial [i]s a search for truth"). The proffer agreement that the defendant signed advances the truth-seeking function of trials. <u>See</u> <u>Chaparro</u>, 181 F.Supp.2d at 335 ("Enforcing proffer agreements . . . enhance[s] the integrity of the judicial truth-seeking function"). To permit the defendant to present evidence, make arguments, or conduct lines of cross-examination that are contrary to his proffer statements, without also permitting the jury to assess that evidence in light of his proffer statements, would thwart this purpose. Enforcement of the terms of the proffer agreement promotes the search for justice and truth and comports with the law of the Second Circuit. <u>See</u> <u>Gomez</u>, 210 F.Supp.2d at 476 ("it is difficult to conceive of a good faith basis for an argument by counsel that contradicts her client's own [proffer] statements made when the client had great incentive to tell the truth"); <u>see</u> <u>generally</u> <u>United States v. Concepcion</u>, 983 F.2d 369, 391 (2d Cir. 1992) ("The trial court may, in its discretion, preclude [cross-examination] questions

---

[2]    The <u>Gomez</u> Court expressly rejected <u>United States v. Duffy</u>, 133 F.Supp.2d 213 (E.D.N.Y. 2001) where the court invalidated a proffer agreement that permitted the Government to use the defendant's proffer statements to rebut inconsistent arguments made at trial after finding that the proffer agreement deprived the defendant of his Sixth Amendment right to "meaningful defense" and effective assistance of counsel. <u>Duffy</u>, 133 F.Supp.2d at 216, 218. <u>Duffy</u> has never been followed by any other district court and it should not be followed here. The defendant's Sixth Amendment right to put on a meaningful defense will not be compromised by enforcing the proffer agreement he knowingly and voluntarily entered. Regardless of whether his proffer statements are admitted at trial, the defendant's counsel will be able to mount a meaningful defense by arguing that the defendant is not guilty and by presenting evidence, making arguments and asking questions that challenge the credibility of the Government's witnesses and the weight and sufficiency of the Government's evidence. <u>United States v. Oluwanisola</u>, 605 F.3d 124, 133 (2d Cir. 2010).

for which the questioner cannot show a good faith basis").

Notably, even when a district court within this Circuit limited the use of a defendant's proffer statement at trial to impeaching the defendant if he testified, the court qualified its holding to prevent the perpetration of a fraud on the court. See United States v. Lauersen, 2000 WL 1693538, at *8 (S.D.N.Y. 2000). The Lauersen Court acknowledged that because it was "bound to protect the integrity of the proceeding and to ensure that matters presented to the jury are grounded in good faith," the court would not permit defendant's counsel to elicit substantive, non-impeachment testimony, either on cross-examination of witnesses called by the Government or from witnesses called to testify on the defendant's behalf, or to present arguments to the jury at any stage of the proceeding, including opening statements, that directly contradicted specific factual statements made by the defendant in the proffer. See id.

For the above reasons, the defendant's statements in his proffer sessions should be admitted to rebut any inconsistent direct or implied factual assertion by the defense or to impeach the defendant if he testifies.

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By:          /s/
James McMahon/Perry A. Carbone
Assistant United States Attorneys
(914) 993-1936/1945

cc:  Theodore Greene, Esq. (by ECF)