

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

August 19, 2014

Hon. Vincent L. Briccetti
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

      Re:  *United States v. Lowe*, 13 Cr. 985 (VB)

Dear Judge Briccetti:

      The Government respectfully submits this letter in response to the defendant's *in limine* motions, proposed *voir dire* question and proposed jury instruction.  This letter also seeks *in limine* to admit evidence of the nature of the relationship between the defendant and one of his co-conspirators.

**I.    The Defendant's Proposed Instruction on the Reliance of Accountant Defense and Motion to Admit Propensity Evidence Should be Rejected**

      For the defendant to receive a jury instruction on the defense that he relied on the advice of his accountant, he must offer some evidence that:  1) he sought the advice of an accountant that he considered competent; 2) he made full and accurate disclosure to the accountant; and 3) he acted in strict accordance with the advice given; 4) without having any reasonable basis to believe that the advice was incorrect.  Sand, *Modern Federal Jury Instructions*, Instr. 59-9.  The reliance charge is not given automatically simply because a defendant requests one. The proposed charge must correctly state the law and the defendant must establish sufficient facts to warrant such an instruction.  *See United States v. Quinones*, 2011 WL 1150864 (2d Cir. 2011); *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997).

    **A.    The Defendant and His Tax Preparer Acted Together in the Defendant's Tax Crimes**

      It is highly unlikely that the defendant could make a sufficient showing to warrant such a charge.  He would first

have to show that his tax preparer said the returns the defendant filed were accurate and proper and that the defendant reasonably believed it. That would be a difficult argument for the defendant to make because the evidence shows the defendant and his tax preparer acted together in knowingly preparing and filing the defendant's false tax returns. The defendant therefore could not have reasonably believed that the tax preparer had prepared proper and accurate returns.

For example, one of the exhibits the Government will offer is a letter from the tax preparer that the defendant caused him to send to the Tapestry, an upscale residential building, as part of the defendant's lease application. The tax preparer stated in that letter that the defendant's gross income for 2008 was $242,139 and his adjusted gross income was $232,572. The defendant reported gross receipts of only $26,331 on the copy of the 2008 return, prepared by the tax preparer, that he filed with the IRS. The defendant's actual gross receipts for 2008 were at least $310,459.

That letter is not the only false statement the defendant caused the tax preparer to send to the Tapestry management. As noted in the Government's earlier *in limine* brief, the defendant caused the tax preparer to send the Tapestry fake tax returns showing that he made substantially more income than he reported on the tax returns for the same years that he filed with the IRS. Those false tax returns are further evidence that the defendant and the tax preparer acted in concert in filing the defendant's false tax returns.

Other evidence belies the defendant's attempt to shift the blame for his tax crimes to the tax preparer. The defendant has been a tax scofflaw for over a decade, long before he ever met the tax preparer. He failed to report over 2 million dollars in the six years charged in the indictment. For three of those years, he never reported more than $25,000. He failed to file for the other three years. No reasonable person could accept in good faith from a tax preparer the advice to report less than ten percent of his or her income. Finally, the defendant has already admitted in proffer sessions that he knowingly and willfully failed to report all his income in the charged tax years.[1]

---

[1]  The Government intends to offer the defendant's statements in the proffers in its direct case and will file a separate motion on that point.

### B. Evidence Impeaching the Tax Preparer Would Be Irrelevant to this Case

Before the defendant can impeach the tax preparer under Rule 806, the Government must offer a statement of the tax preparer. The defendant's tax returns are statements of the defendant, not his tax preparer. Regardless, evidence impeaching the tax preparer is irrelevant and should also be precluded under Rule 403.

First, the defendant is simply incorrect in his assertion that his false personal tax returns for the years 2007 through 2010 are "statements" of the tax preparer. He claims that "[t]he tax returns that [the tax preparer] prepared are within the ambit of Rule 806 because the government contends that they are 'made by' the defendant's 'agent . . . on a matter within the scope of that relationship and while it existed.'" Defendant's Brief at 2. The Government claims no such thing. To the contrary, the defendant's tax returns are not offered as statements of the the preparer any more than a confession is the statement of the law enforcement agent who records (or prepares) the statement. *E.g.*, *United States v. Moskowitz*, 581 F.2d 14, 21-23 (2d Cir. 1978). In *Moskowitz*, the Second Circuit held that a sketch of a robber by an artist was not the statement of the artist. Rather, the sketch became relevant to the statement of a witness who said the sketch looked like the robber. Similarly, the defendant's gross income figures on his tax returns are statements by the defendant. A tax return is the statement of the taxpayer who swears to accuracy of the return.

Second, even if the defendant's tax returns could be considered "statements" of the tax preparer, they would not become logically or legally relevant until the defendant comes forward with some evidence that he made full and accurate disclosure to the tax preparer and acted in good faith on advice that the tax preparer gave. Given that the defendant can make no such claim, the tax preparer's credibility is not relevant.[2]

Third -- and still assuming *arguendo* that the defendant's tax returns are the tax preparer's statements under Rule 801 -- evidence of the tax preparer's conviction offered in an attempt to impeach those statements would be irrelevant. By raising an advice of accountant defense, the defendant is not disputing

---

[2] The Government is arranging to have the tax preparer brought here for the trial so that the defendant -- or the Government -- can call him.

that the tax returns -- the tax preparer's statements -- were wrong.  Instead, he is only arguing that he unwittingly relied on the tax preparer.  The Government is obviously arguing that the tax returns were wrong.  Since neither party is arguing that the tax returns accurately reflect the defendant's income figures, there is no reason to impeach any "statement" by the tax preparer that the returns were accurate.  While a party may impeach any witness, Fed. R. Evid. 607, that impeachment must be relevant.  Impeachment of a "statement" that neither party is claiming is accurate or true neither has a tendency to make the fact asserted in the statements -- the defendant's false income figures -- more or less probable nor is it of consequence in determining the action. Fed. R. Evid. 401.  Evidence offered to impeach the tax preparer's "statements", therefore, would be irrelevant.  Furthermore, for the reasons set forth in the Government's motion to preclude the tax preparer's conviction, the conviction should be precluded pursuant to Rule 403 because it would confuse the jury.

The cases cited by the defendant do not support his arguments.  In both *United States v. Corneilius*, 623 F.3d 486 (7th Cir. 2010) and *United States v. Nachamie*, 101 F.Supp.2d 134 (S.D.N.Y. 2000), the courts only cited in passing the general rule that a defendant may collaterally impeach a non-testifying co-conspirator's statements offered by the Government.  In both of these cases, the Government offered statements that specifically implicated the defendant.  Here, the Government is not offering any statements by the tax preparer that implicate the defendant.

The defendant's motion is a transparent attempt to use evidence that would be admitted for the limited purpose of impeachment under Rule 806 as substantive evidence in support of his attempt to shift the entire blame for his tax crimes to his accountant.  The Court should not permit the defendant to play so fast and loose with the limitations on impeachment evidence.

## II. The Government Objects to Any Questions to Potential Jurors on the Subject of Their Political Views

The defense has requested that the Court's jury *voir dire* include the following:

> Whether any of the jurors have held public office, have worked for or donated to a political campaign, have belonged to political clubs, or similarly been involved in elective politics or the activities of

4

>  political parties, and a description of such activities?

The Government objects to this proposed question.

This proposed question would unduly intrude into the potential jurors' privacy.  As the Supreme Court has held, the privacy interests of jurors deserves substantial consideration.  *See Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 511-12 (1984).  The Second Circuit has held that "[t]here are numerous cases in which a trial court's decision to limit *voir dire* has been sustained because the matter sought to be probed by the defendant was too remote from the issues in the case to warrant the intrusion into the potential jurors' private thoughts."  *United States v. Barnes*, 604 F.2d 121, 140 (2d Cir. 1979).  The *Barnes* court noted that "[a]s to religion, our jury selection system was not designed to subject prospective jurors to a catechism of their tenets of faith . . . or to force them to publicly declare themselves to be atheists."  *Barnes*, 604 F.2d at 141.

A prospective juror's political views and affiliation are simply not proper areas of inquiry.  To permit otherwise would intrude into the potential juror's privacy and lead to the appearance, if not the reality, that the jury was a partisan body that rendered its decision on political grounds.  Any concern that the defendant's political affiliation or his involvement in politics would hinder a potential juror's ability to be fair and impartial can be handled on *voir dire* by the questions proposed last week by the Government:

>  Some of the charges in this case involve the New York Democratic Senate Campaign Committee, or the DSCC, which is a political campaign committee.
>
>    a. Could the fact that this case involves the DSCC have any impact on the way you would view the case?
>
>    b. Could the fact that this case involves politics, politicians or the financing of political campaigns have any impact on the way you would view the case?

5

### III. The Defendant's Motion to Strike "Prejudicial Surplusage" is Meritless

The defendant also moves to strike the allegation in the indictment relating to the defendant's scheme to defraud John Doe out of $66,000. According to the defendant, the Government already has plenty of evidence of unreported income for the 2007 and proof of this additional income derived from fraud is prejudicial and unnecessary. Defendant's Brief at 3. The defendant's motion should be denied. All relevant evidence is prejudicial to some extent and the evidence the defendant seeks to exclude is no exception.

The defendant's theft of money from Jon Doe is admissible not only to prove that the defendant failed to report fraud proceeds, but it is direct evidence of the fraud scheme charged in Count 9, as the Government explains in its motion *in limine* at page 3. Evidence that establishes the crimes charged in the Indictment is admissible without regard to Rule 404(b) because it is part of the *res gestae*, and is thus not evidence of *other* acts at all. Accordingly, as the Second Circuit has made clear, acts "inextricably intertwined with the charged conduct [are] not subject to Rule 404(b)." *United States* v. *Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *United States* v. *Frank*, 11 F. Supp. 2d 314, 316 (S.D.N.Y. 1998) (Cote, J.) ("Evidence of uncharged criminal activity is not even Rule 404(b) evidence if it '. . . is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'")

Thus, there is simply no basis to exclude the evidence of the fraud on John Doe.

### IV. Evidence of the Financial Relationship Between The Defendant and One of his Coconspirators is Admissible as Background Evidence of the Conspiracy

Finally, the Government also seeks an *in limine* ruling from the Court about testimony it intends to elicit from a witness (the "Witness") who worked closely with the defendant and Senator #1, one of the defendant's coconspirators. The Witness will testify that on several occasions he overheard Senator #1 and the defendant discuss money. The defendant asked Senator #1 for payment and Senator #1 also asked the defendant for money. On one occasion, the Witness was present when Senator #1 asked the defendant for money. Shortly thereafter, the defendant went out and returned with an envelope that appeared to contain cash

6

and asked the Witness to give the envelope to Senator #1. This proffered testimony is entirely consistent with statements made by the defendant during proffers in which he admitted giving Senator #1, who was approving payments of the defendant's consulting fees from the DSCC and Senator #1's own campaign committee, regular cash payments totaling approximately $75,000.

Evidence of the relationship between the defendant and Senator #1 is relevant and admissible as background of the criminal venture and is inextricably intertwined with the charged crimes.  In *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000) evidence of defendant's prior criminal conduct with his co-conspirators was relevant "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed." *Id., quoting United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992); *see United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996)("[o]ne legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal's relationship developed; this sort of proof furnishes admissible background information in a conspiracy case").

In this case, evidence that the defendant was giving Senator #1 cash is directly relevant to show the basis of trust between the defendant and Senator #1. *United States v. Harris*, 733 F.2d 994, 1004 (2d Cir. 1984).  As the Second Circuit has noted: "we have held that evidence of a prior criminal relationship between the defendant and a witness may be admitted for purposes of assessing the plausibility of witness's dealings with the defendant...." *United States v. Yiu Wing Li*, 205 F.3d 1326 (2d Cir. 2000)(not selected for publication).

Further, the defendant cannot claim unfair prejudice. Because the evidence at issue here bears directly on central issues at trial there is virtually no risk of "unfair prejudice" posed by admission of the evidence.  As The Second Circuit explained in *United States* v. *Jimenez*:

> To be sure, all evidence incriminating a defendant is, in one sense of the term, "prejudicial" to him: that is, it does harm to him. In that sense, the more pertinent evidence is, the more prejudicial it is. What "prejudice" as used in Rule 403 means is that the admission is, as the rule itself literally requires, "unfair" rather than "harmful."

7

789 F.2d 167, 171 (2d Cir. 1986); *see United States* v. *Diaz*, 878 F.2d 608, 615 (2d Cir. 1989); *see also Oregon* v. *Kennedy*, 456 U.S. 667, 674 (1982)("Every act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt."). "Unfair" prejudice is that which "tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States* v. *Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993) (quoting *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).

The prejudicial effect of this highly relevant evidence is minimal. The defendant is charged with conspiring with Senator #1 to defraud the DSCC of $100,000. That he gave cash to Senator #1 is certainly no more serious than submitting a false invoice to the DSCC to repay a political consultant at Senator #1's direction. *See, e.g.*, *United States* v. *Livoti*, 196 F.3d 322, 326 (2d Cir. 1999)(evidence that defendant choked person admitted where it "did not involve conduct more inflammatory than the charged crime"); *United States* v. *Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992)(Rule 403 did not preclude evidence of prior misconduct which "did not involve conduct more sensational or disturbing" than the charged crime).

Finally, this Court can guard against any potential prejudice, however remote, by providing the jury with limiting instructions as appropriate "final protection" against any possible prejudice. *United States* v. *Levy*, 731 F.2d 997, 1002 (2d Cir. 1984).

                               Respectfully submitted,

                               PREET BHARARA
                               United States Attorney
                               Southern District of New York

By:               /s
                            _____
                               James McMahon/Perry A. Carbone
                               Assistant United States Attorneys
                               (914) 993-1936/1945

cc:   Theodore Greene, Esq. (by ECF)